UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR NEILL and ARIANNA LOPEZ, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.<br><br>Defendant. | Civil No.   11-CV-2254-BGS<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; &**<br><br>**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs Arthur Neill and Arianna Lopez filed a Second Amended Complaint ("SAC") in this putative class action on July 6, 2012. (Doc. No. 23, SAC.)  In their SAC, Plaintiffs bring class claims against Defendant Bank of America, N.A. ("Bank of America") for (1) violations of the Consumer Legal Remedies Act, California Civil Code section 1770 et seq.; (2) violations of California Business and Professions Code section 17200 et seq.; (3) breach of contract; and (4) conversion.  (SAC.)

On July 13, 2012, the parties to this action filed cross motions for summary judgment.  (Doc. Nos. 33 & 34.)  The parties also filed a joint motion to file documents under seal.[1]  (Doc. No. 27.)  On August 31, 2012, the parties filed responses in opposition.  (Doc. Nos. 36 & 37.)  On September 7, 2012, the parties filed replies in support of their respective motions for summary judgment.  (Doc. Nos. 41 & 42.)

---

[1]The Court addresses the parties' joint motion to seal in a separate order.

After receiving the parties' papers, the Court took the motions for summary judgment under submission and ordered the parties to submit supplemental briefing on three issues. (Doc. Nos. 43 & 44.) The parties submitted their supplemental papers on October 1, 2012. (Doc. Nos. 45 & 46.) The Court, pursuant to its discretion under Local Rule 7.1(d)(1), finds the present motions suitable for disposition without oral argument. For the reasons set forth below, the Court grants Defendant Bank of America's motion for summary judgment and denies Plaintiff's motion for summary judgment.

**Background**

This putative class action arises out of Bank of America refusing Plaintiffs Arianna Lopez and Arthur Neill access to the funds in their Deposit Account after an attorney sent Bank of America a New York "restraining notice" on October 4, 2010. (Jt. Stip. of Facts, Doc. No. 40 ¶¶13, 15.) Ms. Lopez lived in New York prior to moving to San Diego, California in October of 2006, where she has since continuously resided. (*Id.* ¶¶2-4.) On April 10, 2009, New York debt collector Mel S. Harris and Associates filed a lawsuit against Ms. Lopez in the New York County Civil Court, in the state of New York, on behalf of a party named Pinpoint Technologies 3, LLC. (*Id.* ¶5.) Mel S. Harris and Associates, LLC filed a proof of service in the New York action, claiming that it personally served Ms. Lopez with the summons and complaint. (*Id.* ¶6.) On July 31, 2009, the New York County Civil Court entered a default judgment against Ms. Lopez based on the claim of personal service. (*Id.* ¶7.)

In July 2010 in the County of San Diego, Ms. Lopez and her husband, Mr. Neill, opened a joint consumer deposit account with Bank of America, with an account number ending in 3960 ("deposit account"). (*Id.* ¶8.) At the time of opening the account, Plaintiffs lived in California and have never given Bank of America any residential address outside California. (*Id.* ¶9.) The only address Bank of America had on file for Plaintiffs was a California address. (*Id.* ¶10.)

A document entitled "Deposit Agreement and Disclosures" ("deposit agreement") served as the agreement governing the deposit account. (*Id.* ¶11.) The deposit agreement was not negotiated between the parties, as Bank of America does not allow consumers to negotiate or make changes to such agreements, and was presented to Plaintiffs on a "take it or leave it" basis. (*Id.* ¶¶11-12.) The deposit agreement

contains a section entitled "Legal Process–Subpoena and Levy." (Doc. No. 33-3, Neil Decl., Ex. A at 41.[2]) Under the agreement, "'[l]egal process' includes a writ of attachment, execution, garnishment, tax withholding order, levy, restraining order, subpoena, warrant, injunction, government agency request for information, search warrant, forfeiture or other similar order." (*Id.*) The section provides, in relevant part, that Bank of America may accept and comply with legal process served at locations other than the location where the account, property or records are held, may hold and turn over funds or other property to the court or creditor as directed by the legal process, and may charge the account a fee for each legal process. (*Id.*) The agreement also provides that the account holder "direct[s] [Bank of America] not to contest the legal process." (*Id.*) The deposit agreement also contains a choice of law provision stating that the agreement is governed by and interpreted according to federal law and the law of the state where the account is located. (*Id.* at 9.)

On October 5, 2010, Bank of America's Legal Order Processing ("LOP") unit in Utica, New York, was served with a restraining notice by attorney Mel Harris under authority of the Civil Court of the City of New York, based upon the New York state court default judgment against Ms. Lopez. (Doc. No. 40 ¶13; Doc. No. 34-20, Arcuri Decl., Ex. C.) The restraining notice contains a provision stating:

> This restraint only applies to accounts where your records reflect that the judgment debtor resides within the State of New York and the subject account is domiciled within New York State. If your records reflect that the judgment debtor and/or subject account are outside of New York State, this restraint should not be put into effect.
>
> Funds defined as "exempt" or otherwise excluded under applicable law must not be restrained under this notice. If you have any questions regarding such funds, refer to the attached information subpoena, or contact your attorney or the undersigned.

(Doc. No. 34-20, Arcuri Decl., Ex. C.)

Upon receiving the restraining notice, Bank of America placed a hold on $7,610.78 in Plaintiffs' bank account, placed those funds in Bank of America's separate suspense account, and charged Plaintiffs' account a $100.00 legal processing fee. (Doc. No. 40 ¶14.) On October 5, 2010, Bank of America sent a letter to Plaintiffs informing them that Bank of America received a New York restraining notice. (*Id.* ¶15;

---

[2] For this document, the Court references the page numbers assigned by the electronic docketing system, as Plaintiffs fail to page exhibits in consecutive numerical order with each page showing the exhibit number either immediately above or below the page number as required by Civil Local Rule 5.1(e). The Court notes Plaintiffs also failed to provide a table of contents indicating the page number of each of the succeeding exhibits. *See* Civ.L.R. 5.1(e).

Doc. No. 34-21, Arcuri Decl., Ex. D.) The letter informs Plaintiffs that Bank of America debited $7,610.78 from Plaintiffs' account for the attachment and charged Plaintiff a $100.00 non-refundable processing fee. (*Id.*) Bank of America issued a cashier's check to Ms. Lopez for the New York wage exemption in the amount of $1,740.00 on October 6, 2010, which Plaintiffs never cashed. (Doc. No. 40 ¶16.) Bank of America did not honor Plaintiffs' rent check, which was written on Plaintiffs' deposit account after October 5, 2010. (*Id.* ¶17.)

On October 10, 2010, Mr. Neil wrote a letter to Bank of America on behalf of Plaintiffs contesting the debiting of their account and asserting that Bank of America's levy was not valid under California law. (*Id.* ¶18; Doc. No. 34-16, Park Decl., Ex. H.) On November 1, 2010, Bank of America employee Rick Phan replied to Mr. Neil's letter. (Doc. No. 40 ¶19; Doc. No. 33-3, Neil Decl., Ex. D at 72.) In his letter, Mr. Phan states that he reviewed the situation, verified that there was no bank error involved in processing the legal order, and declined Mr. Neil's request for the return of the disputed amount or reimbursement of the related fees. (*Id.*) Mr. Phan advised Mr. Neil that Bank of America acted in accordance with the Deposit Agreement and Disclosures "Legal Process" section and recommended Plaintiffs contact Mel Harris and Associates to dispute the restraining notice. (*Id.*) On October 6, 2011, Bank of America restored $7,610.78 to Plaintiffs' account and never transferred Plaintiffs' money to a third party. (Doc. No. 40 ¶¶20-21.)

On July 13, 2012, Plaintiffs filed a motion for summary judgment. (Doc. No. 33.) In their motion, Plaintiffs argue that the only method for enforcing out of state judgments in California is through California's Sister State Judgment Act ("SSJA"), which Bank of America did not follow; that the restraining notice at issue in this case is not enforceable in California; that the Court must construe the term "legal process" in the deposit agreement to mean legal process enforceable under California or federal law; and that Bank of America's contract provision regarding a lack of duty to contest legal process is unconscionable. (Doc. No. 33-1.) Defendant Bank of America filed a response in opposition on August 31, 2012. (Doc. No. 36.) Plaintiffs filed a reply in support of their motion on September 7, 2012.[3] (Doc. No. 41.)

---

[3] Plaintiffs' reply is incorrectly captioned "Plaintiff's [sic] Opposition to Defendant's Motion for Summary Judgment." (Doc. No. 41.) The content of this submission, however, is a reply in support of Plaintiffs' motion for summary judgment.

Also on July 13, 2012, Defendant Bank of America filed a motion for summary judgment and a joint motion to file documents under seal.[4] (Doc. Nos. 34 & 27.) Defendant moves for summary judgment on Plaintiffs' claims, arguing that there is no private right of action against a bank for responding to legal process, the deposit agreement authorized Bank of America to restrain their funds and impose a $100.00 fee, Bank of America was required by New York law to honor the restraining notice, and Plaintiffs' claims are preempted by the National Banking Act. (Doc. No. 34-1.) Plaintiffs filed a response in opposition on August 31, 2012. (Doc. No. 37.) Defendant filed a reply in support of its motion for summary judgment on September 7, 2012. (Doc. No. 42.)

On September 7, 2012, following receipt of the briefing on the motions for summary judgment, the Court took the motions under submission, vacated the hearing on the motions, and indicated it would be ordering supplemental briefing. (Doc. No. 43.) The Court ordered the parties to submit supplemental briefing addressing whether the freezing of the bank account was sufficient to constitute an act of enforcement of a money judgment under California's Sister State Judgment Act and the legal effect of the Mel Harris "disclaimer" in the restraining notice. (Doc. No. 44.) The Court also ordered the parties to clarify grounds for summary judgment and address what causes of action would remain in the event the Court determines the restraining notice did not implicate the Sister State Money-Judgment Act. (*Id.*) On October 1, 2012, Plaintiffs and Bank of America submitted their supplemental briefs. (Doc. Nos. 45 & 46.)

**Discussion**

**I. Legal Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

---

[4]With its motion for summary judgment, Bank of America filed a request for this Court to take judicial notice of filings in other court cases pursuant to Fed.R.Evid. 201. (Doc. No. 34-2.) Because the Court finds reference to these documents unnecessary to resolve the pending motions for summary judgment, the Court declines to take judicial notice of the requested documents.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. The Deposit Agreement

Plaintiffs allege that Bank of America breached the deposit agreement by seizing the funds in Plaintiffs' deposit account after receipt of a levy from a court system outside of California and by failing to provide these funds to Plaintiffs upon demand. (SAC ¶¶69-73.) Plaintiffs also allege and assert that Bank of America violated California's Consumer Legal Remedies Act by failing to tell Plaintiffs in the deposit agreement that Bank of America would seize their property based upon a New York restraining notice and by including an unconscionable provision ordering Bank of America not to contest legal process in the deposit agreement. (SAC ¶¶58-60; Doc. No. 46 at 4-5.) Plaintiffs argue that they are entitled to summary judgment finding the term "legal process" in the deposit agreement ambiguous and finding the "no contest" provision in the deposit agreement unconscionable.

### A. Ambiguity of "Legal Process"

Plaintiffs argue that the term "legal process" is ambiguous. (Doc. 33-1 at 7.) The deposit agreement defines "legal process" to include a writ of attachment, execution, garnishment, tax withholding order, levy, restraining order, subpoena, warrant, injunction, government agency request for information, search warrant, forfeiture or other similar order. (Doc. No. 33-3, Neil Decl., Ex. A at 41.) It goes on to state, "We may accept and comply with legal process: served in person, by mail, by facsimile transmission, or by other means; or served at locations other than the location where the account, property or records are held." (*Id.*)

Plaintiffs argue the term "legal process" is ambiguous because the definition does not identify any jurisdiction from which legal process must originate. (Doc.33-1 at 9.) Plaintiffs contend that their belief at the time of contract formation was that the deposit account was subject to California and federal law, and

as such only legal process enforceable under federal or California law would be legal process for purposes of the deposit agreement. (*Id.* at 10.) Plaintiffs derive this meaning from the language of the choice of law provision in the deposit agreement, which provides that said agreement is subject to federal law, and to the laws of the state of California. (*Id.* at 10-11.)[5] Plaintiffs argue that the average California consumer, seeing such a phrase, would assume that "legal process" means legal process enforceable in California. (*Id.* at 11.)

As the deposit agreement is governed by California law, the Court interprets the contract pursuant to California law. Under California law, the interpretation of a contract term, including whether it is ambiguous, presents a question of law for the court. *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 904 (1986). A contract is to be interpreted so as to give effect to the intent of the parties at the time the contract is formed. Cal. Civ.Code, §1636. The court infers the parties' intent from the written provisions of the contract. Cal. Civ.Code §1639. The written provisions of a contract "are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage...." Cal. Civ.Code §1644. "Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning." *Penn-America Ins. Co. v. Mike's Tailoring*, 22 Cal.Rptr.3d 918, 921-22 (Cal. Ct.App. 2005) (citation omitted). "An ambiguity arises only if '... there [is] more than one construction in issue which is semantically permissible....' " *Id.* at 922 (quotation and citations omitted).

The Court finds that Plaintiffs' interpretation is not reasonable given the plain reading of the deposit agreement. As an initial matter, the Court notes that the provision on page two regarding "governing law" does not mention legal process, is thirty-two pages before the legal process section, and explicitly deals with interpreting the rights and obligations of the parties under the agreement. The legal process section, however, identifies the types of instruments that qualify as legal process, including "restraining orders, ... or other similar order." Plaintiffs, therefore, were on notice as to the types of process that could be served on the bank. This would logically include the restraining notice served in this case. More importantly, the very next sentence tells Plaintiffs that legal process can be served at locations other than where the account,

---

[5] Page two of the deposit agreement under the title "Governing Law" provides, "This Agreement, and your and our rights and obligations under this agreement, are governed by and interpreted according to federal law and the law of the state where your account is located."(Doc. No. 33-3, Neil Decl., Ex. A at 9.)

property, or records are held. That is exactly what took place in this case. The restraining notice was served on a Bank of America New York branch, a location other than where the account was held. In sum, the Court finds no ambiguity as to this term and denies Plaintiffs' motion for summary judgment as to this issue.[6] Accordingly, because the deposit agreement specifically provided Bank of America to comply with the legal process at issue in this case and to charge a fee for each legal process, the Court denies Plaintiffs' motion for summary judgment on their breach of contract claim based upon a contract ambiguity.

### B. Unconscionability of "No Contest Clause"

Plaintiffs argue that the provision in the deposit agreement stating that the account holder "direct[s] [Bank of America] not to contest the legal process" is unconscionable.[7] (Doc. No. 33-1 at 11-15.) Plaintiffs however, do not argue what the consequence of a finding of unconscionability should be in regards to their motion for summary judgment.[8] (*Id.*) California Civil Code section 1670.5(a) allows the court to refuse to enforce all or part of a contract if the court finds as a matter of law that the contract or any clause of the contract was unconscionable at the time it was made. Cal. Civ.Code § 1670.5(a). "Unconscionability has both a procedural and substantive element." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 114 (2000) (quotations and citations omitted).

The procedural element focuses on "oppression" or "surprise." *Id.* (quotations and citations omitted). "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" *Bruni v. Didion*, 160 Cal.App.4th 1272, 1288 (2008) (quotations and citations omitted). "'Surprise' involves the extent to which the supposedly agreed-upon terms of the

---

[6] Curiously, Plaintiffs' interpretation, "legal process enforceable under federal or California law," would not lead to a different result in that said legal process was enforceable under California law given California's interpretation of a deposit account being an intangible asset.

[7] Plaintiffs actually take alternative positions with regard to this contract provision. On one hand they argue that the provision is unconscionable, and on the other argue that because the deposit agreement provides that Bank of America is not to contest legal process, it breached the contract by failing to comply with the disclaimer on the restraining notice. As set forth in this order, both of Plaintiffs' arguments fail.

[8] Plaintiffs note in their motion for summary judgment that if any clause of a contract is found to be unconscionable, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may limit the application of any unconscionable clause to avoid any unconscionable result. (Doc. No. 33-1 at 12.) However, Plaintiffs do not go on to argue what this Court should do in regards to the alleged unconscionable clause and how it will affect their claims going forward.

bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (quotations and citations omitted).

The substantive element of unconscionability focuses on "overly harsh" or "one-sided" results. *Armendariz*, 24 Cal.4th at 114 (quotations and citations omitted). "A contract is largely an allocation of risks between the parties. A contractual term is substantively suspect if, viewed at the time the contract was formed, it allocates the risks in an unreasonable or unexpected manner." *Zullo v. Superior Court*, 197 Cal.App.4th 477, 484 (2011) (citation omitted).

Both elements must be present to invalidate a contract for unconscionability, but they need not be present in equal parts. *Id.* "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal.4th at 114.

**1. Procedural Unconscionability**

Plaintiffs assert that the deposit agreement is a contract of adhesion, which goes to the analysis of unconscionability. (Doc. 33-1 at 13.) "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal.4th 83, 113 (2000) (quotation and citation omitted). A contract of adhesion is procedurally unconscionable when it is presented on a take it or leave it basis and is oppressive due to an inequality of bargaining power that resulted in no real negotiation and an absence of meaningful choice. *Nagrampa v. MailCoups*, 469 F.3d 1257, 1281 (9th Cir. 2006).

Plaintiffs argue that the deposit agreement was a standardized account agreement, presented to Plaintiffs on a take it or leave it basis with no opportunity to meaningfully negotiate the terms of the contract. (Doc. 33-1 at 13.) Plaintiffs take issue with the contract provision whereby the account holder orders Bank of America to not contest legal process, hereinafter "no contest clause." (*Id.*) Bank of America points out in their opposition that Plaintiffs did not read the agreement nor attempt to negotiate any of the terms. (Doc. 36 at 7-8.)

Having reviewed the deposit agreement, the Court views it as a standardized contract issued by Bank of America. Since Plaintiffs never attempted to negotiate any terms of that agreement, the record is silent

as to whether the Bank of America would have allowed negotiation of any of the terms, or whether it was on a take it or leave it basis. Regardless, as Plaintiffs concede, the *Armendariz* court did point out that the fact a contract is one of adhesion does not itself render the contract unconscionable; the procedural and substantive elements need to be considered as well. 24 Cal. 4th at 114; (Doc. 33-1 at 13.) Further, in *AT&T Mobility LLC v. Concepcion*, –U.S.–, 131 S.Ct. 1740 (2011), where the contract at issue was a contract of adhesion, the Supreme Court held that California's prohibition on class action waivers in arbitration agreements is preempted by the FAA in part because "the rule is limited to adhesion contracts, but the times in which consumer contracts were anything other than adhesion are long past." *Id.* at 1750. In light of *AT&T Mobility*, the Court does not find that the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability.

"'Procedural' unconscionability includes the element of 'oppression,' which depends in part on the absence of meaningful choice by the contracting party; and even though a contract may be adhesive, the existence of 'meaningful' alternatives available to such contracting party in the form of other sources of supply tends to defeat any claim of unconscionability." *Dean Witter Reynolds, Inc., v. Superior Court of Alamenda County*, 211 Cal.App.3d 758, 771 (1989). In the present case, Plaintiffs have not shown a lack of meaningful choice with respect to opening a bank account that did not have a "no contest clause." Plaintiffs merely assert, "it is common knowledge that a bank account is a prerequisite for participating in large sectors of our economy..." (Doc. 33-1 at 14), but fails to show that all banks require the same "no contest clause" with the resulting $100 fee per legal process. Bank of America on the other hand contends that Plaintiffs had plenty of meaningful choice outside the contract, in the form of the various banks they considered before deciding to open their account with Bank of America. (Doc. 36 at 8.) The record before the Court does not establish that Plaintiffs lacked a meaningful choice of bank accounts, and therefore the oppression prong of procedural unconscionability fails to be met.

Regarding the "surprise" prong of procedural unconscionability, Plaintiffs, almost as an afterthought, claims for the first time in their reply to Bank of America's opposition to Plaintiffs' motion for summary judgment that the unconscionable term was buried in the back of a forty-five page contract where it is unlikely to be discovered and difficult to root out and look for alternatives. (Doc. 41 at 9.) The Court interprets this contention as Plaintiffs' claiming "surprise" under the procedural prong.

The deposit agreement is a forty-five page document with a table of contents, which is divided into sections or chapters with subchapters underneath. (Doc. No. 33-3, Neil Decl., Ex. A at 5-52.) Under the section entitled "Other Terms and Services" is a subsection entitled "Legal Process-Subpoena and Levy...34." (*Id.* at 7.) On page thirty-four of the deposit agreement in bold lettering and larger font is the subsection "Legal Process-Subpoenas and Levy." (*Id.* at 41.) Under that subsection are approximately seven paragraphs all in the same font. Herein is the alleged unconscionable terms regarding the "no contest clause." The Court, after review of this clause finds there is nothing that meets the "surprise" prong as that term is defined. The terms under this section are not hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. As such Plaintiffs fail to establish procedural unconscionability under the "surprise" prong.

### 2.   **Substantive Unconscionability**

"Substantive unconscionability relates to the effect of the contract or provision. A 'lack of mutuality' is relevant in analyzing this prong. The term focuses on the terms of the agreement and whether those terms are so one-sided as to *shock the conscience*." *Davis v. O'Melveny & Meyers*, 485 F.3d 1066, 1075 (9th Cir. 2007) (internal quotation marks and citations omitted) (emphasis in original). "A determination of substantive unconscionability involves whether the terms of the contract are unduly harsh or oppressive." *Id.* at 1175-76 (internal quotation marks and citations omitted).

Plaintiffs argue the "no contest clause" is unfairly one sided because it requires its customers who want to open an account to sign a contract that orders Bank of America to forego contesting any legal process and charge its client a legal process fee of $100.00 after doing nothing to defend the interests of these clients. (Doc. 33-1 at 14-15.) Plaintiffs also assert they were greatly prejudiced in that their funds were illegally seized if the restraining order is not enforceable in California. (*Id.* at 15.)

As the Court discusses below, Plaintiffs' funds were not illegally seized as the New York judgment against the Ms. Lopez was being enforced in New York and Bank of America was not only in its right in adhering to legal process, but also was acting under immunity in doing so. Therefore, Plaintiffs did not suffer any prejudice from Bank of America's actions. Further, any prejudice that Plaintiffs could hypothetically suffer under this "no contest clause" is not caused by Bank of America adhering to legal

process. Rather, the cause of the prejudice is derived from a third party who is seeking legal process in order to pursue a lawsuit against the hypothetical plaintiff who signed the deposit agreement. Under this analysis, the "no contest clause" does not appear to be unfair. Indeed, it seems unfair to require a bank to contest legal process that the account holder and a third party creditor set in motion. The bank is merely a garnishee in this legal drama.

Additionally, the Court notes that both New York and California have recognized this precarious position in which the bank finds itself, and have legislated immunity for a bank as garnishee adhering to legal process. *See* Cal. Civ. Proc. Code §488.455(d); and N.Y.C.P.L.R. §5209. The Court finds that the "no contest clause" is not unduly harsh or oppressive, therefore not substantively unconscionable.

Accordingly, the Court denies Plaintiffs' motion for summary judgment that the "no contest clause" is unconscionable.

**III. California's Sister -State Judgment Act**

Plaintiffs' causes of action for violation of California's Unfair Competition Law and conversion rest upon a theory that Bank of America wrongfully seized funds from Plaintiffs' deposit account because the seizure was based upon a levy from a court system outside of California. (SAC ¶¶61-68; 74-78.) Plaintiffs argue in their motion for summary judgment that Defendant was enforcing a New York judgment in California, and therefore the SSJA applied, requiring Defendant to domesticate the judgment in California prior to seizing any funds. (Doc. No. 33-1 at 4-5.) Defendant, on the other hand, contends that there was no enforcement of the New York judgment in California; rather the enforcement of the judgment was in New York. Therefore, Defendant argues the SSJA did not apply.

"[T]he legal efficacy of serving one bank office or branch with attachment process to reach accounts carried at other branches or offices, whether the banking operation be intrastate or interstate in character, is to be determined by reference to the law of the state in which process issues." *Shinto Shipping Co. LTD v Fibrex & Shipping Co.*, Inc., 425 F.Supp. 1088, 1091 (N.D.Cal. 1976). In the present case the Restraining Notice was issued in New York pursuant to section 5222(b) of the Civil Practice Law and Rules. As such New York law applies to this legal process.

In *Koehler v. Bank of Bermuda Limited*, 12 N.Y.3d 533 (N.Y. 2009), New York's highest court

held that a New York court with personal jurisdiction over a defendant may order him to turn over out of state property regardless of whether the defendant is a judgment debtor or a garnishee. *Id.* at 541. "We conclude that a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located outside New York, pursuant to CPLR 5225(b)." *Id.*; *see, e.g.*, *McCarthy v. Wachovia Bank*, 759 F.Supp.2d 265, 275 (E.D.N.Y. 2011) (finding it permissible under *Koehler* for garnishee to honor the restraining notice served pursuant to New York CPLR section 5222 in that garnishee was subject to the jurisdiction of the New York courts).

The Court will discuss in a separate analysis whether Bank of America, as a garnishee, abided by the law of New York in complying with the restraining notice. However, a preliminary issue presented by the Plaintiffs is whether Bank of America was required to follow California procedure as outlined in the SSJA, Cal.Civ.Proc. Code section 1710.10 *et seq.*, before restraining Plaintiffs' deposit account as required by the restraining notice.[9] In *Kahn v Berman*, 198 Cal.App.3d 1499 (1988), the court was presented with the issue of whether the United States Constitution's Article IV, section 1, "Full Faith and Credit Clause" provided that Nevada procedural law must be followed when enforcing a Nevada judgment in California. *Id.* at 1506. In *Kahn*, the plaintiffs argued that by requiring them to follow California procedure rather than Nevada procedures for enforcement of the Nevada judgment, the full faith and credit clause of the United States Constitution was violated. The court held that the full faith and credit clause was not violated by requiring that a sister state judgment first be reduced to a California judgment before it may serve as the basis for a judgment lien on real property located in California. *Id.* at 1507.

Under *Kahn* and the cases cited therein, the procedure of the state in which the judgment is to be enforced has to be followed. *Id.* Was Bank of America, by complying with the New York restraining notice, in effect enforcing the New York judgment in California, thereby invoking the procedures for enforcing money judgments as outlined in California's SSJA?

---

[9]Under the SSJA, a judgment creditor files an application for entry of a California judgment based on a sister state judgment. Cal. Civ. Proc. Code, § 1710.15. The judgment creditor must then serve promptly the notice of entry of judgment upon the judgment debtor "in the manner provided for service of summons." Cal. Civ. Proc. Code, § 1710.30, subd. (a). The judgment debtor has 30 days after service of the notice of entry of judgment to move to vacate the judgment. Cal. Civ. Proc. Code, § 1710.40, subd. (b).

The property at issue in this case is a deposit account[10]. For purposes of attachment law, unlike real property, a deposit account is an intangible. *See Pacific Decision Sciences Corp. v. Superior Court of California*, 121 Cal.App.4th 1100, 1105 (2004); *see also Fairbanks v. Superior Court*, 46 Cal.4th 56, 65 (2009) (providing as examples of intangible goods "investment securities, bank deposit accounts and loans, and so forth"). It has long been the rule in California that "an intangible, unlike real or tangible personal property, has no physical characteristics that would serve as a basis for assigning it to a particular locality. The location assigned to it depends on what action is to be taken with reference to it." *City of Oakland v. Oakland Raiders et al.*, 32 Cal.3d 60, 74 (1982) (quoting *Atkinson v. Superior Court of Los Angeles*, 49 Cal.2d 338, 342–342 (1957)); *see also Lord Simon Cairns et al. v. Franklin Mint Company, et al.*, 24 F.Supp.2d 1013, 1026 (C.D.Cal.1998) (citing *Waite v. Waite*, 6 Cal.3d 461, 467 (1972)). "When ... the issue, as in this case, involves jurisdiction to compel the obligor to pay one claimant and not a competing claimant, 'the debt or claim is usually regarded as having a situs in any state in which personal jurisdiction of the debtor can be obtained.'" *Pacific Decision Sciences Corp.*, 121 Cal.App.4th at 1108 (quoting *Waite*, 6 Cal.3d at 467-68.)

The plaintiff in *Pacific Decision Sciences Corp.* sought the California court to issue a writ to attach the defendant's Florida deposit account. The court found that the Florida bank, not the defendant, was the obligor or debtor and its location, Florida, was considered the location of the intangible property plaintiff sought to reach. *Id.* at 1108. As such, under attachment law, a writ of attachment to reach this intangible property would need to be issued to levying officers in Florida. *Id.*

In this case, Plaintiffs and Pinpoint Technologies 3, LLC were competing claimants to the right to be paid the money on deposit in the Bank of America deposit account. Applying the principles laid out in *Pacific Decision Sciences Corp.* to the present case, if the situs of the deposit account is determined to be California, then under *Kahn*, the restraining notice would have to follow California law in order to attach

---

[10]Under California Uniform Commercial Code section 9102, subd.(a)(29) a deposit account is "a demand, time, savings, passbook, or similar account maintained with a bank" that is not evidenced by an instrument. Cal.U.Com.Code, § 9102, subd. (a)(29). An "instrument" for purposes of attachment law "means a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment." Cal.U.Com.code, § 9102, subd. (a)(47).

that account. However, in that the deposit account is considered an intangible asset, the situs of that intangible asset is any state in which personal jurisdiction of Bank of America, the obligor or debtor for purposes of this analysis, can be obtained. As Bank of America has branches and offices in New York and is therefore subject to personal jurisdiction, the situs of the deposit account is in New York. Therefore, the New York court had jurisdiction over Bank of America to issue the restraining notice on the deposit account. Under this circumstance, California's attachment procedure as provided in California's SSJA is not applicable. Bank of America, by abiding by the restraining notice as garnishee, was part of an enforcement of the New York judgment in New York, and not in California. California enforcement procedure as outline in California's SSJA was not implicated. Accordingly, the Court denies Plaintiffs' motion for summary judgment on their claims based upon Defendant's failure to comply with the SSJA.

**IV. Legal Effect of Mel Harris's Disclaimer**

As discussed above, New York law applies to Bank of America's enforcement of the restraining notice issued as part of Pinpoint's enforcement of the New York judgment. Included in the restraining notice issued by Mel Harris to Bank of America was a disclaimer stating that:

> This restraint only applies to accounts where your records reflect that the judgment debtor resides within the State of New York and the subject account is domiciled within New York State. If your records reflect that the judgment debtor and/or subject account are outside of New York State, this restraint should not be put into effect.

(Doc. No. 34-20, Arcuri Decl., Ex. C.) Bank of America argues that despite this disclaimer, it was required by New York law to honor the restraining notice and has no legal liability for not following the disclaimer and is therefore entitled to summary judgment on all of Plaintiffs' claims.

Bank of America asserts that under New York law there is no private right of action against a garnishee-bank for complying with legal process. New York C.P.L.R. section 5209 provides:

> A person who, pursuant to an execution or order, pays or delivers, to the judgment creditor or a sheriff or receiver, money or other personal property in which a judgment debtor has or will have an interest... is discharged from his obligation to the judgment debtor to the extent of the payment or delivery.

"The garnishee's compliance with CPLR section 5209 is a safe harbor that preempts the judgment debtor's common-law claim that the garnishee should have investigated the validity of the execution." *McCarthy v. Wachovia Bank N.A.*, 759 F.Supp.2d 265, 278 (E.D. New York 2011) (quoting *Yu v. Riggs National Bank*

*of Washington, D.C.*, 670 N.Y.S.2d 187 (1st Deb't 1998)); *see, e.g.*, *Jonas v. Citibank, N.A.*, 414 F. Supp.2d 411, 417 (S.D.N.Y. 2006) ("C.P.L.R. 5209 has been understood to bar a judgment debtor's claim against a garnishee for payment of a debt or delivery of property pursuant to an execution.").

Accordingly, under New York law, Bank of America, as garnishee, is entitled to immunity from suit by a debtor if Bank of America complied with C.P.L.R. section 5209, namely, by complying with the restraining notice. The restraining notice in the present case provides:

> Take Notice that pursuant to subdivision(b) of Section 5222 of the Civil Practice Law and Rules, which is set forth in full herein, you are hereby forbidden to make or suffer any sale, assignment or transfer of, or any interference of with, any such proceeds or pay over or otherwise dispose of any such debt except as *therein* provided.

(Doc. No. 34-20, Arcuri Decl., Ex. C. (emphasis added).) Section 5222(b) provides that the only exceptions to restraint are "set forth in subdivisions (h) and (i) of this section[11], and except upon direction of the sheriff or pursuant to an order of the court." N.Y.C.P.L.R. §5222(b).

None of the exceptions provided under section 5222(b) provide that the issuing attorney may add a disclaimer such as Mel Harris did in this case. Furthermore, there is no extra-territorial exception to a garnishee bank complying with a restraining notice. As discussed previously, "a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee." *Koehler*, 12 N.Y.3d at 541. In this case, the New York court had personal jurisdiction over Bank of America, the garnishee, and therefore Bank of America could honor the restraining notice, even where the account was based out-of-state. *See McCarthy*, 759 F.Supp.2d at 275 (holding that because Wachovia is subject to the jurisdiction of New York courts, "it was permissible for defendants to issue and honor the restraining notice served pursuant to New York C.P.L.R. section 5222"). Additionally, the Court finds that Plaintiffs' argument regarding Bank of America's duty to investigate the validity of Mel Harris's disclaimer fails as a matter of law. Under New York law, there is

---

[11] Section 5222(h) provides that if direct deposit payments have been made to the account within the forty-five days preceding notice to the institution, the institution may not restrain $2,500 in the debtor's account, or if the account balance is equal to or less than $2,5000, the account shall not be restrained and the notice shall be deemed void. Section 5222(i) provides that a restraining notice does "not apply to an amount equal to or less than the greater of two hundred forty times the federal minimum hourly wage prescribed in the Fair Labor Standards Act of 1938 or two hundred forty times the state minimum hourly wage." N.Y.C.P.L.R. §5222(h)-(i).

no requirement that a garnishee bank investigate the validity of a restraining notice served upon it.[12] *McCarthy*, 759 F.Supp.2d at 277-278. Therefore, the Court concludes that Bank of America did comply with New York C.P.L.R. section 5209 and is entitled to immunity. Accordingly, the Court grants Bank of America's motion for summary judgment on all of Plaintiffs' causes of action.

## Conclusion

For the reasons set forth above, the Court:

1. DENIES Plaintiffs' Motion for Summary Judgment (Doc. No. 33); and

2. GRANTS Defendant's Motion for Summary Judgment (Doc. No. 34.).

The Clerk of Court shall enter a final judgment in this case.

**IT IS SO ORDERED**.

DATED: December 14, 2012

**BERNARD G. SKOMAL**
United States Magistrate Judge

---

[12]The Court has already denied Plaintiffs' motion for summary judgment seeking a finding that the contractual provision providing that Bank of America is not to contest legal process is unconscionable.